MARY E. GANDY v. C. C. DEWEY ET AL.

[FILED DECEMBER 4, 1889.]

1. **Liens:** LANDLORD: MORTGAGEE OF CROPS: PRIORITY. A rented of B & C certain land at $2 per acre on which to sow winter wheat, the rent to be paid in cash. It was provided in the lease that the amount due for rent should be a lien on the crop, but the lease was not recorded. Afterwards the lessee executed a chattel mortgage on the crop to one who had no notice of the conditions of the lease. *Held,* That the lien of the mortgagee was superior to that of the lessor. (*Lanphere v. Lowe,* 3 Neb., 131.)

2. **Chattel Mortgage:** ALTERATION: EVIDENCE. A clear preponderance of the testimony tends to show that the mortgage had not been altered after its execution.

ERROR to the district court for Johnson county. Tried below before APPELGET, J.

*E. W. Thomas,* and *D. F. Osgood,* for plaintiff in error:

The leases not having been recorded, could not affect the rights of innocent third parties and were besides attempts to charge a thing not *in esse,* as they were made before planting the wheat. (*Lanphere v. Lowe,* 3 Neb., 131; *Boggs v. Thompson,* 13 Id., 403.) Conclusive evidence was necessary to show that the chattel mortgage was modified.

(*Sloan v. Becker*, 26 N. W. Rep. [Minn.], 730 ; *Guernsey v. Am. Ins. Co.*, 17 Minn., 104; *Gillespie v. Moore*, 2 Johns. Ch. [N. Y.], 585 ; *Nevius v. Dunlap*, 33 N. Y., 676 ; *Stockbridge Iron Co. v. Hudson Iron Co.*, 107 Mass., 290; *Miner v. Hess*, 47 Ill., 170.)

*A. M. Appelget*, for defendants in error C. C. and R. W. Dewey:

One who deals with a tenant relative to the leased premises, is bound to know the nature of the tenancy. (*Uhl v. May*, 5 Neb., 160; *Conlee v. McDowell*, 15 Id., 188 ; *Weaver v. Coumbe*, 15 Id., 170.)  One cannot convey a greater interest than he possesses. (*Yates v. Kinney*, 19 Neb., 287.)  The leases in this case reserved a definite interest in the realty and crops, differing from those which merely create a lien on the latter.  Hence the rights of the lessee did not accrue until the payment of the rent. (*Metcalfe v. Fosdick*, 23 Ohio St., 114 ; *Stephenson v. Haines*, 16 Id., 478; *Case v. Hart*, 11 Id., 367 ; *Dalton v. Landhan*, 27 Mich., 529 ; *Haynes v. Ledyard*, 23 Id., 319 ; 44 Id., 621 ; Jones, Chattel Mortgages, [3d Ed.], sec. 11.) It was not necessary that the leases should have been recorded in order to preserve the rights of the Deweys. (*Metcalfe v. Fosdick, supra.*)  The mortgage is invalid so far as the crop was unplanted at the time of the execution. (*Boggs v. Thompson*, 13 Neb., 403 ; *Cole v. Kerr*, 19 Id., 557 ; *Johnson v. Walker*, 23 Id., 741.)

*L. C. Chapman*, for defendant in error Lawson :

As the evidence shows that not more than seventy of the 100 acres were planted at the time of the execution of the mortgage, the latter is void so far as it affects Lawson. (*Horton v. Williams*, 21 Minn., 187; *Russell v. Winn*, 37 N. Y., 591.)  The mortgage was in possession of plaintiff in error's agent, and that fact raises a presumption that the alteration was made by him. (1 Smith's Leading Cases, 816.)  Such

alteration, if material, avoids the instrument. (*Oliver v. Hawley*, 5 Neb., 439; *Savings Bank v. Shaffer*, 9 Id., 1; *Miller v. Alexander*, 13 Tex., 505.)

MAXWELL, J.

About the middle of September, 1886, C. U. Richardson leased of C. C. Dewey and R. W. Dewey 200 acres of cultivated land in sections 27 and 34, town 6, range 10, in Johnson county, agreeing to pay $2 per acre for the same and the lease should be a lien on the crops raised upon the land. The leases were executed prior to the sowing of the crop (winter wheat) and were never filed for record.

On the — day of October, 1886, Richardson executed the chattel mortgage in suit upon the wheat sown upon the land in question to the plaintiff, Mary E. Gandy, which mortgage was filed for record on the — day of October, 1886. After the execution and delivery of the chattel mortgage to the plaintiff, Richardson left Johnson county. In July, 1887, the plaintiff went to cut the wheat mortgaged to her by said Richardson, and defendants, the Deweys, claimed to have possession by their agent, Joseph Lawson, who went on the land to cut the wheat about the time the agent of plaintiff went to cut the same, and Lawson refused to desist in the further cutting of the wheat, the plaintiff brought this action in replevin. The plaintiff pleads the right of possession under the chattel mortgage above described. The defendants, the Deweys, answered by a general denial. Lawson, who was also made a party defendant, answered, setting up the leases of Richardson and that he had abandoned the same and that the crops therefore reverted to the landlord. L. D. Fletcher & Co. had a mortgage subject to that of plaintiff. On the trial of the cause a verdict was returned in favor of the defendants for the sum of $390, the value of the property, and $47.77 damages, and a motion for a new trial having been overruled, judgment was entered upon the verdict.

12

The principal contest in this case is between the landlord and mortgagee, the lease not being recorded. This precise question was before this court in *Lanphere v. Lowe,* 3 Neb., 131, and it was held that the right of the mortgagee was superior to that the of landlord. It is said: "It is a very ancient rule of law, that a man cannot grant or charge that which he has not," and in *Jones v. Richardson,* 10 Met. [Mass.], 488, it is said that this "is a maxim of law too plain to need illustration, and which is fully supported by all the authorities." (Bac., Abr., Grants, D, 2; *Codman v. Freeman,* 3 Cush. [Mass.], 309; 2 Kent Com., 703; *Head v. Goodwin,* 37 Me., 187; *Robinson v. MacDonnell,* 5 Maule & Selw. [Eng.], 228; *Chynoweth v. Tenney,* 10 Wis., 400.)

This doctrine is applied to mortgages of goods which may be subsequently acquired by the mortgagee; it is equally applied to sales of personal property, and rights of property. (*Chesley v. Josselyn,* 7 Gray [Mass.], 490; *Rice v. Stone,* 1 Allen [Mass.], 569.) The lease not having been put upon record, it could not affect the rights or liens of third parties without notice. They are protected by the registry acts of our state. (*Sheldon v. Conner,* 48 Me., 584.) There is no evidence showing that the mortgagees of the tenant had any notice whatever of the defendant's claim of lien upon the building. The building is personalty and was in possession of the tenant when the mortgage was executed. At the time the lease was executed the building, as appears by the facts before us, had no existence as the property of the tenant. Therefore, in any aspect of the case, as it is now before this court, I think the mortgagees secured by their mortgage a lien upon the building, and a superior equity to any claim of the defendant against the same.

The Deweys trusted Richardson for the amount of the cash rent. It is true they were to have a lien on the wheat. This was good between the parties, but to charge third

parties with notice, the lease should have been recorded. The Deweys had no interest in the grain itself, except such as they acquired by the lease, and this not being recorded, a *bona fide* purchaser or mortgagee in good faith would not be charged with notice of the lien. This was so at the time the decision in *Lanphere v. Lowe* was rendered, and since that time the statute has been amended to require conditional sales, etc., to be recorded in order to protect the interest of the vendor or lessor therein. (Comp. St., ch. 32, secs. 26, 27.) The rights of the plaintiff, therefore, were superior to those of the defendants. The provisions of section 1073 of the Code do not seem to apply where the rent is not reserved in kind, and need not be considered.

It is claimed that the chattel mortgage has been changed since its execution, but a clear preponderance of the evidence shows that such is not the case. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.